**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JENNIFER UPPERCO ) | |
| 241 16ᵗʰ St., Apt. 811 ) | |
| Toledo, OH 43604 ) | |
| ) | |
| MELISSA ST. PIERRE ) | |
| 1301 Anderson Ave. ) | |
| Maumee, OH 43537 ) | |
| ) | |
| KIMBERLY BAILEY ) | |
| 1805 Parkdale Ave. ) | |
| Toledo, OH 43607 ) | |
| ) | |
| Individually, and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| ) Civil Action No.:_____ | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LUCAS COUNTY BOARD OF ) | |
| COMMISSIONERS ) | |
| On behalf of Lucas County Sheriff's office ) | |
| One Government Center ) | |
| Suite 800 ) COMPLAINT | |
| Toledo, OH 43604 ) AND JURY DEMAND | |
| ) | |
| LUCAS COUNTY SHERIFF'S OFFICE ) | |
| 1622 Spielbusch Avenue ) | |
| Toledo, OH 43604 ) | |
| ) | |
| Defendants. ) | |

## <u>COMPLAINT</u>

Plaintiffs Jennifer Upperco, Melissa St. Pierre, and Kimberly Bailey, on behalf of themselves and all others similarly situated, complain as follows against Defendants Lucas County Board of County Commissioners and Lucas County Sheriff's Office ("Defendants"):

## NATURE OF THE CASE

1.       This is a class action complaint brought to remedy sex discrimination and sexual harassment in employment at the Lucas County Correctional Center ("the Correctional Center") in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; Ohio Revised Code ("R.C.") Chapter 4112; and the Equal Protection Clause of the United States Constitution.

2.       Plaintiffs seek to certify a class of all women who have worked at the Lucas County Corrections Center, except for the period of time that any of these women served in a supervisory position in which they had authority to formulate or enact policy preventing inmate sexual harassment or inmate discipline.

3.       Regardless of the division or department at the Correctional Center in which they work, Plaintiffs and other class members endure severe and pervasive sexual harassment as a result of: (a) the exceptionally vulgar, offensive and demeaning sexually disorderly conduct that male detainees direct at them because they are women, and (b) Defendants' refusals or failures to take adequate steps reasonably calculated to curtail that harassment.

4.       The harassment to which Plaintiffs and class members have been subjected is egregious.  Male detainees routinely: (a) expose their genitals to them; (b) engage in exhibitionist masturbation in front of them; (c) subject them to a barrage of sexualized epithets, insults, comments, and gestures; and (d) threaten sexual violence against them.  Male correctional officers are rarely, if ever, subjected to this harassment.

5.       Each of the Defendants named in this complaint has tolerated and fostered this harassment, exhibiting deliberate indifference to it.

2

6.     The Defendants provide less protection to female employees when they are sexually harassed by male detainees than to employees experiencing other forms of abuse.  By providing less protection, the Defendants have created a more dangerous and hostile work environment for women than for men.

7.     The harassment of female employees by male detainees has been so frequent, pervasive, unwelcome, and consistently traumatizing that it made the Correctional Center an objectively abusive, hostile, oppressive, and dangerous workplace for Plaintiffs and other class members, adversely changing the terms and conditions of their employment.

8.     Defendants are aware of this harassment because among other things, it is open and obvious, and female employees have discussed it with management.  By failing to take steps to curtail the harassment, the Defendants have enabled the harassment. They tolerate a workplace in which men regularly expose their genitals to women, engage in exhibitionist masturbation in plain view of women, and bombard women with sexually vulgar epithets, gestures, and threats.  They bear legal responsibility for a workplace in which inmates are rarely disciplined for this harassment and in which women who complain about it are often ignored.

9.     Defendants are capable of curtailing the sexual harassment against female employees.  Pervasive indecent exposure, open masturbation, and sexual disorderly conduct by male inmates, against female employees, are not the norm at other jails.  Well-managed facilities prevent or minimize this type of misconduct. Rather, Defendants tolerate and further foster this harassment by exhibiting deliberate indifference to it.

10.     Defendants have designated certain posts or worksites within the prison as gender specific so that only a female or male employee may work there.  This results in female employees being deprived from working in certain locations within the Correctional Center and being required

3

to work in other areas, such as the medical floor, where they encounter sexual harassment. Additionally, Defendants require female employees to work overtime in gender specific positions, which results in them receiving a lesser rate of pay.

11. Plaintiffs also seek to certify a class of all women who have worked at the Lucas County Corrections Center, except for the period of time that any of these women served in a supervisory position in which they had authority to formulate or enact policy to designate posts or assignments as gender specific.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

13. This Court has supplemental jurisdiction over the Plaintiffs' State civil rights claims pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendants Lucas County Sheriff's Office and Lucas County Board of County Commissioners because, at all times relevant, Plaintiffs worked for Defendants within this District at 1622 Spielbusch Ave, Toledo, OH 43604.

15. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3), § 2000e-6(b), and 28 U.S.C. § 1391(b) because it is where the events or omissions giving rise to the causes of action occurred.

## PARTIES

16. Plaintiffs Jennifer Upperco, Melissa St. Pierre, and Kimberly Bailey are female residents of Ohio.

17. Plaintiff Jennifer Upperco was employed by the Lucas County Sheriff's Office as a nurse at the Lucas County Correctional Center from approximately September 2012 through

approximately July 2022. Plaintiff was an employee within the meaning of 42 U.S.C. § 2000e-2 and R.C. §4112.01.

18.     Plaintiff Melissa St. Pierre is employed by the Lucas County Sheriff's Office as a deputy sheriff in administrative services at the Lucas County Correctional Center. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e-2 and R.C. §4112.01.

19.     Plaintiff Kimberly Bailey is employed by the Lucas County Sheriff's Office as a corrections officer at the Lucas County Correctional Center. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e-2 and R.C. §4112.01.

20.     Defendant Lucas County Board of County Commissioners ("County") is a political subdivision of the State of Ohio, and an employer as defined under 42 U.S.C. § 2000e-2 and R.C. §4112.01.

21.     Defendant Lucas County Sheriff's Office ("Sheriff") is an employer under 42 U.S.C. § 2000e-2 and R.C. §4112.01 within the State of Ohio.

## EXHAUSTION

22.     Plaintiffs timely filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC").

23.     The EEOC issued Plaintiff Jennifer Upperco a notice of her right to file a civil action on March 30, 2023. A copy of the notice is attached as Exhibit A.

24.     The EEOC issued Plaintiff Melissa St. Pierre a notice of her right to file a civil action on March 30, 2023. A copy of the notice is attached as Exhibit B.

25.     The EEOC issued Plaintiff Kimberly Bailey a notice of her right to file a civil action on March 30, 2023. A copy of the notice is attached as Exhibit C.

26.     Plaintiffs do not need to administratively exhaust their claims under the Ohio Civil Rights Act.

## FACTUAL ALLEGATIONS

27.     Plaintiff Jennifer Upperco was employed as a nurse by the Lucas County Sheriff's Office within the Lucas County Corrections Center from September 2012 through July 2022. During the entire time she worked for Lucas County, Ms. Upperco was subjected to sexual harassment by male inmates on a regular basis including, but not limited to, crude comments, sexual proposals, sexual remarks about women's appearance, lewd sexual gestures, nudity, and masturbation.  Likewise, she has observed inmates engage in similar misconduct towards other female employees.  On October 16, 2020, Ms. Upperco filed a class charge of sex discrimination with the U.S. Equal Employment Opportunity Commission protesting the harassment.

28.     Plaintiff Melissa St. Pierre has been employed with the Lucas County Sheriff's Office within the Lucas County Corrections Center since February 2012.  Ms. St. Pierre worked as a corrections office for approximately 2-3 years, then transitioned to a position in the laundry department where she worked for approximately 4 years, and, since July 2018, she has worked as a deputy sheriff in administrative services.  During the entire time she has worked for Lucas County, Ms. St. Pierre has been subjected to sexual harassment by male inmates on a regular basis including, but not limited to, exhibitionist masturbation, genital exposure, and vulgar and inappropriate comments and catcalls or a sexual nature.  Likewise, she has observed inmates engage in similar misconduct towards other female employees.  On April 21, 2021, Ms. St. Pierre filed a class charge of sex discrimination with the U.S. Equal Employment Opportunity Commission protesting the harassment.

29.     Plaintiff Kimberly Bailey has been employed as a correctional officer with the Lucas County Sheriff's Office within the Lucas County Corrections Center since March 2015. During the entire time she has worked for Lucas County, Ms. Bailey has been subjected to sexual harassment as a result of conduct by male inmates.  For example, she has experienced crude comments, sexual proposals and sexual remarks about women's appearance, lewd sexual gestures, nudity, and exhibitionist masturbation.  Likewise, she has observed inmates engage in similar misconduct towards other female employees.  On May 21, 2021, Ms. Bailey filed a class charge of sex discrimination with the U.S. Equal Employment Opportunity Commission protesting the harassment as well as the requirement for female employees to work specific posts because they are women.

### Nudity and Exhibitory Masturbation

30.     Inmates expose their penises and engage in exhibitory masturbation at class members on a regular basis.  Routinely, inmates stand at their windows or lay naked on their bunks masturbating or exposing their penises in plain view of female employees.

31.     For example, during the time Ms. St. Pierre was working in the laundry department between approximately 2014 and 2018, inmates frequently exposed their genitals to her when she passed their cells.  For example, one male inmate in cell #1 on the north wing of the 6th floor intentionally exposed his penis to Ms. St. Pierre each time he saw her at the gate to enter the module.

32.     As another example, on a weekly basis during the time Inmate Jesus Escalera was housed there while Ms. St. Pierre worked in the laundry department, Inmate Escalera would place his penis through the meal slot directed at Ms. St. Pierre when she delivered his laundry.  Ms. St. Pierre reported this inmate's behavior to Lieutenant Todd Reed on several occasions.  Lt. Reed

7

responded with comments like, "Suck it up buttercup" and "Quit your bitching."  Ms. St. Pierre was required to continue interacting with this inmate.

33.     In or around October 2018, Inmate Kevin Washington masturbated in front of Ms. Upperco when she checked his blood pressure.  Ms. Upperco reported this incident to her supervisor, Anissa Floure, who noted that Inmate Washington had also masturbated in front of her.

34.     For example, in approximately March or April 2020, Inmate Vincent Payne exposed his penis and masturbated each time Ms. Upperco or another female nurse provided him medication.

35.     In approximately January or February 2021, Ms. Bailey was forced to repeatedly see an inmate masturbating at her because the inmate was housed next to an inmate Ms. Bailey had been assigned to check on every 10 minutes.

36.     As another example, in March 2021, Inmate Christopher Wyatt stripped nude and exposed his penis to the medical staff.

37.     As another example, on March 19, 2022, Inmate Steven Eyster exposed his penis and masturbated at Ms. Upperco while she was talking to him about his medical condition.  Ms. Upperco reported Inmate Eyster's conduct to Correctional Officer Wheatley-Jones, Correctional Counselor Adia Washington, Deputy Denise Golliday, Sergeant Amanda Nowacki, and the sergeants in the booking department during her shift that same day.  She also reported this incident to her supervisor, Director Anissa Floure.  Despite Ms. Upperco's multiple reports, Lucas County management did not take any disciplinary or other responsive action.

**Sexual Assault and Physical Touching**

38.     The sexual harassment includes unwanted physical touching and sexual assault.

39.     For example, in approximately 2016, an inmate made repeated lewd comments to Ms. Upperco and then physically grabbed her between her legs.  Although a male correctional officer who witnessed the assault escorted the inmate out of the medical unit, it is Ms. Upperco's understanding that the inmate was never disciplined for the attempted sexual assault.

### Lewd Sexual Gestures

40.     Inmates frequently make sexual gestures at female employees.

41.     For example, in approximately March 2019, Inmate Braylock, in the presence of several correctional officers, mimicked sexual motions by moving his hips at Ms. Upperco and repeatedly made suggestive comments about engaging in sexual intercourse with her and expressed his desire to enter into a sexual relationship with her.  Ms. Upperco repeatedly told Inmate Braylock to stop this harassing behavior, but he continued undeterred in the presence of other employees who did nothing to intervene or assist Ms. Upperco.

42.     As another example, in March 2021, Inmate Darrel Reid mimicked masturbating his penis while requesting Vaseline from Ms. Upperco for an alleged injury.

43.     As another example, on April 8, 2021, Inmate Moses White repeatedly took off his face mask, moved his tongue back and forth, and mimicked performing oral sex while Ms. Upperco provided him with medical attention.

### Sexual Propositions

44.     Inmates frequently make sexual propositions to female employees.

45.     For example, inmates have sent letters to Ms. Upperco propositioning her for sex and/or outlining their interest in establishing romantic relationships with her.  Ms. Upperco reported these incidents to her supervisor, Director of Medical Services Anissa Floure, however no remedial action was taken to address this sexually harassing conduct.

9

46. As another example, going back to approximately 2012 when Ms. St. Pierre first started working for Lucas County, Inmate Sammy Moore sent a love letter to her talking about how beautiful she was and how he would "treat" her if she was his woman. Ms. St. Pierre provided the letter to her Sergeant at the time, and he responded with, "I don't want that" and then told her to throw it in the garbage. To Ms. St. Pierre's knowledge, the inmate was never disciplined, and she had to continue working in the area where he was housed and interact with him on a regular basis.

### Sexual Comments

47. Inmates catcall and make sexual comments to female employees on a daily basis.

48. For example, inmates made sexual comments to Ms. Upperco such as "ass looks good" and "let me eat that pussy." They commented on her body and told her the sexual acts they wanted to perform on her. As another example, an inmate asked Ms. Upperco how her "gag reflex" was, suggesting he wanted oral sex.

49. Inmates have also regularly catcalled and made explicit and sexually vulgar comments to Ms. St. Pierre, especially when she works alone. The inmates would reference female body parts and describe the sexual acts they wanted to perform on Ms. St. Pierre and other females. For example, inmates made comments like, "Hey baby," "damn girl you fine," "oh, you looking thick today," "once you go Black you can't go back," "I'm sure I could do better than your husband," "You want this, I know you do," and about Ms. St. Pierre to other inmates: "I'd like to fuck her."

### Photos of Scantily Clad or Nude Women

50. Inmates routinely post pictures of naked or scantily clad women with their legs spread out to expose their genitals on the walls, in violation of policy. Female staff are forced to

look at these graphic images as they perform their duties.  When female employees have tried to enforce these rules and require the inmates to remove these images, it creates havoc and the female employees are subjected to further harassment and threats from the inmates because supervisors do not enforce these rules.

## Defendants Had Knowledge of the Inmate Sexual Harassment, Fostered a Discriminatory Environment, and Failed to Take Any Reasonable Steps to Curtail Inmate Sexual Harassment of Female Employees

51.     Defendants are aware that the inmates sexually harass female staff.  In addition to management's own observations, female employees, including Ms. Upperco, Ms. St. Pierre, and Ms. Bailey have repeatedly reported and documented the inmate sexual harassment.

52.     When female employees have reported inmate sexual harassment, managers rarely, if ever, initiate or process the complaints.

53.     When supervisors are present and observe the sexual harassment, they generally turn a blind eye to it.

54.     Female employees are openly ridiculed and discouraged from reporting inmate sexual misconduct.

55.     Within the medical unit, Ms. Upperco and other female employees have reported inmate sexual harassment to their supervisors.  However, Defendants have taken no reasonable steps in response to those complaints.

56.     Ms. Upperco, Ms. St. Pierre, and Ms. Bailey have repeatedly reported inmate sexual harassment.  Additionally, Ms. Bailey documented in her logs some of the occasions when inmates were naked, masturbating, or engaging in other sexually harassing behavior.  However, Defendants have taken no reasonable steps in response to those complaints.

57.     For example, Ms. St. Pierre reported to Lt. Todd Reed on several occasions that Inmate Jesus Escalera would place his penis through the meal slot when she delivered his laundry.

11

In response, Lt. Reed told Ms. St. Pierre things like: "Suck it up buttercup" and "Quit your bitching."  Ms. St. Pierre was required to continue interacting with this inmate.

58.     As another example, Ms. St. Pierre asked Lt. Reed if another officer could take blankets to Inmate Robert Harris, who had previously exposed himself and masturbated at her. Even though a male officer volunteered to deliver the blankets to Inmate Harris, Lt. Reed instructed Ms. St. Pierre to do it herself.

59.     As another example, Ms. St. Pierre reported to her Sergeant that Inmate Sammy Moore wrote her a love letter.  The Sergeant responded, saying, "I don't want that" and told Ms. St. Pierre to throw it in the garbage.  The inmate was never disciplined, and Ms. St. Pierre was required to continue working in the area where the inmate was housed.

60.     Similarly, when Ms. Bailey reported to her supervising Sergeant that inmates were engaging in sexually harassing behavior such as exposing themselves and/or masturbating, the responses she received left her with the impression that she had to accept that this type of behavior was "part of the job."

61.     Defendants' managers and supervisors have routinely deterred, discouraged, or prevented class members from reporting the sexual harassment they are subjected to.

62.     Even when incident reports are accepted, rather than rejected, effective discipline rarely issues.

63.     Inmates who engage in indecent exposure, masturbation and other sexual harassment frequently escape punishment because (a) Defendants' supervisors deter class members from filing incident reports; and (b) Defendants fail to investigate, or fail to adequately investigate, incident reports of sexual harassment that are filed.

64. Inmates are not the only ones to whom effective discipline is seldom administered in connection with sexual harassment of female employees. Defendants also seldom, if ever, discipline supervisors and investigators who ignore, minimize, or fail to pursue class members' complaints and incident reports about sexual harassment by male detainees.

65. Defendants, while aware of the existence, scale, and severity of open and obvious sexual harassment, have made decisions to continue to expose female employees to it rather than take steps reasonably calculated to curtail it.

66. Defendants could use – or use more consistently and effectively – measures to curtail or mitigate the sexual harassment of class members, rather than acquiescing in it. These measures, many of them used in other facilities, include among others:

    a. Enforcing consistent, swift and serious discipline against violators, so that harassment has consequences. Currently, the disciplinary system is inadequate, and inmates know there are few, if any, consequences for sexually harassing class members.

    b. Authorizing the use of appropriate force to restrain inmates engaged in indecent exposure or masturbation.

    c. Providing training to all employees, not only class members, about how to respond effectively to inmate sexual harassment.

    d. Providing counseling to help alleviate the trauma suffered by class members.

    e. Taking proactive steps to encourage, rather than discourage, reporting of incidents, including establishing systems for anonymous reporting and suggestions.

    f. Enforcing inmate dress policy, so that all inmates are appropriately clothed throughout the Correctional Center.

    g. Increasing the use of exposure control jumpsuits, without front pants zippers or pockets, designed to thwart indecent exposure and exhibitionist masturbation for violators.

      h.      Reassigning inmates when staff members are concerned for their imminent safety as a result of inmate sexual misconduct.

      i.      Screening inmates for prior offenses.

      j.      Disciplining or imposing other appropriate sanctions on supervisors, managers, and investigators who obstruct efforts to diminish inmate harassment of female employees.

      k.      Notifying staff about inmates who have previously engaged in sexual misconduct.

      l.      Providing anger management, impulse control, or other programming to inmates who engage in harassing behavior to try to curb the behavior.

      m.      Introducing semi-opaque or one-way mirrored coverings on doors and windows, so that inmates cannot see female staff, but staff can see them.

      n.      Introducing rolling medical screens to help shield staff from view of inmates.

      o.      Isolating repeat harassers.

      p.      Increasing referrals for prosecution and cooperating in that process.

      q.      Introducing zero-tolerance policies that are communicated to inmates as well as employees.

      r.      Implementing practices to deal with inmate sexual misconduct towards staff;

67.    The climate of pervasive sexual harassment that permeates the Corrections Center impairs the ability of class members to do their jobs.

68.    Because class members are subjected to severe and pervasive sexual harassment, without the support of their employers, they are impaired in their ability to maintain command presence and inmate control.

69.    The exceptionally vulgar, offensive, and demeaning sexual misconduct that male inmates direct at class members  has been severe and pervasive during the entire time the women

14

have worked at the Corrections Center.  The Defendants, with knowledge of this harassment, have failed or refused to take adequate steps reasonably calculated to curtail this harassment.  The resulting hostile work environment and the Defendants' failures to take adequate steps to curtail it are part of a continuing violation that continues to this day and is ongoing.

**Defendants Discriminated Against Female Employees By Designating Certain Positions as Gender Specific**

70.    In addition to failing to protect female officers and deputies from inmate sexual harassment, Defendants designate certain posts or job assignments so that only a male or female employee can work there.

71.    Defendants require female officers or deputies to cover certain posts because there are, or might be, female inmates present.  For example, until approximately 2021, the medical floor was considered a post where only females were allowed to work, despite the fact that male inmates were also housed there.

72.    For example, the medical floor routinely houses sexually aggressive male inmates.  Indeed, upon information and belief, male inmates have pretended to be suicidal just so they will be housed where they will have contact with female employees and can subject them to vulgar, offensive, and demeaning sexually disorderly conduct.

73.    Additionally, Defendants have prohibited female employees from working in certain locations within the Corrections Center, including inside the unit where inmates are housed on the sixth floor.

74.    Ordinarily, employees are selected for mandatory overtime shifts based on seniority, however, Defendants routinely require female employees to work overtime more frequently as a result of the positions Defendants have specified as gender specific.  This practice occurs on a weekly basis.

75.     If an employee works more than one "regular" overtime shift in a week, the employee will be paid at two times the rate of his or her rate of pay for the second overtime shift. Overtime shifts at gender specific positions are not taken into consideration when counting overtime shifts for determining whether an employee is entitled to be paid two times the rate of their pay.

76.     Defendants have required Plaintiffs and other class members to work at gender specific positions, and have required them to work overtime at gender specific positions and paid them at a lesser rate.

## CLASS ALLEGATIONS (Sexual Harassment)

77.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of:

> All women who have worked at the Lucas County Corrections Center, except for the period of time that any of these women served in a supervisory position in which they had authority to formulate or enact policy preventing inmate sexual harassment or inmate discipline.

78.     Plaintiffs are members of the class they seek to represent.

79.     The proposed class definition in paragraph 77, above, is intended to be subject to revision if facts adduced in discovery suggest desirable or necessary refinements to it, including but not limited to the addition of subclasses, if appropriate.

80.     The members of the class are sufficiently numerous that joinder of all members is impracticable. To the best of Plaintiffs' knowledge and belief, there are at least 100 class members.

81.     There are questions of fact and law common to the class, which are both well-suited to class-wide adjudication and predominate over any questions affecting only individual class members. These common, predominating questions include: (a) whether the exhibitionist masturbation and other sexual harassing conduct engaged in by male detainees creates a sexually

hostile work environment for class members, (b) whether Defendants have taken measures reasonably calculated to curtail that harassment; and (c) whether Defendants have failed to put in place safeguards commonly used by other prison systems.

82.     The individual named plaintiffs' claims are typical of the claims of other class members in that each of them has experienced exhibitionist masturbation or other sexual harassing conduct that has created a sexually hostile work environment for them, and Defendants have not taken measures reasonably calculated to curtail the harassment that each of them has experienced.

83.     Plaintiffs will fairly and adequately represent and protect the interests of the class. They have retained experienced and accomplished counsel who are able and prepared to expend the resources necessary to litigate this case.

84.     A class action is superior to other methods for fairly and efficiently adjudicating this controversy.

## CLASS ALLEGATIONS (Gender Specific Posts)

85.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of:

> All women who have worked at the Lucas County Corrections Center, except for the period of time that any of these women served in a supervisory position in which they had authority to formulate or enact policy to designate posts or assignments as gender specific.

86.     Plaintiffs are members of the class they seek to represent.

87.     The proposed class definition in paragraph 85, above, is intended to be subject to revision if facts adduced in discovery suggest desirable or necessary refinements to it, including but not limited to the addition of subclasses, if appropriate.

88.     The members of the class are sufficiently numerous that joinder of all members is impracticable.  To the best of Plaintiffs' knowledge and belief, there are at least 100 class members.

89.     There are questions of fact and law common to the class, which are both well-suited to class-wide adjudication and predominate over any questions affecting only individual class members.  These common, predominating questions include: (a) whether Defendants implemented or maintained an overly broad gender specific assignment policy without sufficient justification for a bona fide occupational qualification ("BFOQ") exception for such assignments; (b) whether Defendants implemented or maintained policies that required female employees to work certain posts that subjected them to increased sexual harassment; and (c) whether defendants have implemented policies that have resulted in female employees working excessive hours as compared with male employees and/or being paid a lesser amount of overtime compensation than male employees.

90.      The individual named plaintiffs' claims are typical of the claims of other class members in that each of them has suffered from the effects of gender specific work assignment policies implemented by Defendants.

91.     Plaintiffs will fairly and adequately represent and protect the interests of the class. They have retained experienced and accomplished counsel who are able and prepared to expend the resources necessary to litigate this case.

## COUNT I

**Sex Discrimination/Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq***

92.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint.

93.     Because of their sex, Plaintiffs and all other class members have been repeatedly subjected to unwanted sexual harassment from male inmates while assigned to supervise these inmates.

94.     These unwanted acts of sexual harassment by male inmates have included crude and lewd comments, sexual proposals, and sexual remarks about their appearance, sexual gestures, nudity, exhibitionist masturbation, and other indecent and sexually disorderly conduct.

95.     The sexual harassment was directed at Plaintiffs and all other class members because of their sex.  Male employees were not exposed to comparable abuse.

96.     The overall circumstances and sexual harassment are so severe and pervasive as to substantially and negatively alter the terms and conditions of Plaintiffs' and other class members' employment with County and/or the Sheriff's office.

97.     At all relevant times, Defendants possess both actual and constructive knowledge of the harassment that created the hostile work environment to which Plaintiffs and other members of the proposed class have been subjected.  Plaintiffs and other class members complained to their superiors, and filed incident reports due to these unwanted and repeated sexual misconduct by male inmates.  Despite that knowledge, Defendants have failed to take adequate steps reasonably calculated to curtail the harassment that created that hostile work environment.

98.     The cumulative effect of the sexual harassment of Plaintiffs and other class members by these inmates, and the Defendants' failure to address and correct this sexual harassment, have created an abusive and hostile working environment.

99.     There are means and measures used in other prisons and correctional institutions by which Defendants could contain, control, and minimize this sexually abusive environment. These methods and techniques used for controlling prisoner harassment of female staff are well known to corrections professionals.  Despite knowledge of the conditions, and the availability of preventative measures, Defendants have failed to implement reasonable measures that would have protected Plaintiffs and other class members from this damaging and abusive environment.

100.    As a direct and proximate result of the Defendants' failure to take prompt and adequate steps reasonably calculated to curtail male inmates' sexual harassment, Plaintiffs and other class members have been injured and damaged.

## COUNT II

**Sexual Harassment in Violation of the Ohio Civil Rights Act, R.C. §§ 4112 *et seq***

101.    Plaintiff repeats and re-alleges all previous paragraphs of this Complaint.

102.    Defendants are jointly and severally liable under R.C. §§4112.02(A) and 4112.99 for the sexual harassment perpetrated by inmates housed at the Lucas County Corrections Center.

103.    At all relevant times, Defendants are aware or should be aware that Plaintiffs and other class members were subjected to crude and lewd comments, sexual proposals, and sexual remarks about their appearance, sexual gestures, nudity, exhibitionist masturbation, and other indecent and sexually disorderly conduct by male detainees.

104.    With knowledge of that harassment, Defendants nevertheless intentionally failed to take measures reasonably calculated to end or mitigate it.

105.    As a direct and proximate result of Defendants' failure to take appropriate corrective steps to protect Plaintiffs and other class members and address male detainees' sexual harassment, Plaintiffs and other class members have been injured and damaged.

## COUNT III

**Equal Protection – 42 U.S.C. § 1983**

106.    Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

107.    At all times relevant, Defendants have acted under color of law.

108.    At all times relevant, Defendants have known that Plaintiffs and class members were being subjected to indecent exposure, exhibitionist masturbation, threats of sexual violence, groping, assault, and other indecent and sexually disorderly conduct by male inmates.

109.     With knowledge of that harassment, Defendants have nevertheless intentionally failed to take measures reasonably calculated to end or mitigate that harassment, and their failure to enforce effective discipline against male inmates, protect Plaintiffs and other class members, and eliminate or curtail the sexual harassment against them has been so widespread and well-settled as to constitute the *de facto* equivalent of a formal policy of sex discrimination. Alternatively, each of the Defendants has denied Plaintiffs and other class members equal protection of the laws by their acquiescence in and deliberate indifference to such open and notorious sexual harassment.

110.     As a direct and proximate result of Defendants' failure to take appropriate corrective steps to protect Plaintiffs and class members and address male inmates' sexual harassment of them, all Plaintiffs and members of the proposed class have been injured and damaged.

## COUNT IV

**Gender-Specific Post Assignments in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***

111.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint.

112.     Defendants improperly designated positions at the Lucas County Corrections Center, including positions in the medical unit, as gender specific without undertaking a proper analysis of those positions to determine whether gender was, in fact, a bona fide occupational qualification for each designated position.

113.     Defendants improperly designated positions at the Lucas County Corrections Center, including positions in the strict housing unit, as gender specific without undertaking a proper analysis of those positions to determine whether gender was, in fact, a bona fide occupational qualification for each designated position.

21

114.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been subjected to sexual harassment and unsafe working conditions.

115.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been prohibited from working in certain posts or locations.

116.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been forced to work overtime at a lesser rate of pay.

117.    These gender-specific post designations constitute discrimination on the basis of sex in violation of Title VII.  Defendants have pursued, and continue to pursue, policies and practices that discriminate on the basis of sex.

118.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiffs and other class members have been injured and damaged.

## <u>COUNT V</u>

**Gender-Specific Post Assignments in violation of Ohio Civil Rights Act, R.C. §§ 4112 *et seq.***

119.    Plaintiffs repeat and re-allege all previous paragraphs of this Complaint.

120.    Defendants improperly designated positions at the Lucas County Corrections Center, including positions in the medical unit, as gender specific without undertaking a proper analysis of those positions to determine whether gender was, in fact, a bona fide occupational qualification for each designated position.

121.    Defendants improperly designated positions at the Lucas County Corrections Center, including positions in the strict housing unit, as gender specific without undertaking a

22

proper analysis of those positions to determine whether gender was, in fact, a bona fide occupational qualification for each designated position.

122.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been subjected to sexual harassment and unsafe working conditions.

123.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been prohibited from working in certain posts or locations.

124.    As a direct and proximate result of Defendants' designation of gender-specific posts, female correctional officers, including Plaintiffs and other class members, have been forced to work overtime at a lesser rate of pay.

125.    These gender-specific post designations constitute discrimination on the basis of sex in violation of R.C. § 4112.02.  Defendants have pursued, and continue to pursue, policies and practices that discriminate on the basis of sex.

126.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiffs and other class members have been injured and damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray that this Court grant the following relief:

A.    Certify the claims in this complaint for class-wide adjudication, under Federal Rule of Civil Procedure 23.

B.    Appoint Plaintiffs' Counsel as interim class counsel pursuant to Rule 23(g)(3) and Class counsel pursuant to Rule 23(g)(1).

C.     Declare that the Defendants violated the Plaintiffs' and other class members of rights protected by Title VII of the Civil Rights Act of 1964; the Fourteenth Amendment, and the Ohio Civil Rights Act.

D.     Order the Defendants to adopt and implement policies, procedures, and practices that will protect the Plaintiffs and other class members from sexual harassment by male inmates and eliminate the hostile work environment.

E.     Order the Defendants to adopt and implement policies, procedures, and practices that will allow for the equitable distribution of work assignments and overtime regardless of employee gender.

F.     Order Defendants to develop and implement appropriate and effective measures to prevent discrimination, including, but not limited to, policies, procedures, and training for employees and officials;

G.     Appoint an independent monitor to oversee Defendants' adoption and implementation of the required policies, practices and procedures, and to report to the Court;

H.     Award Plaintiffs and the Class pecuniary and non-pecuniary compensatory damages;

I.     Order the Defendant to pay the Plaintiffs' reasonable attorney's fees, costs, and expenses;

J.     Award pre- and post-judgment interest; and

K.     Order all other legal and equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial for all claims that may be tried to a jury.

DATED: June 28, 2023

*/s/ Nancy Grim*
Nancy Grim (Ohio. Bar No. 0014376)
Nancy Grim, LLC
P.O. Box 108
Kent, OH 44240-0002
Email: nancy.grim@nancygrimlaw.net
Phone: (330) 678-6595
Fax: (844) 270-7608

Heidi R. Burakiewicz (Seeking admission
*Pro Hac Vice*)
Burakiewicz & DePriest, PLLC
5017 V Street NW
Washington, DC 20007
Email:  hburakiewicz@bdlawdc.com
Phone: (240) 751-6583

*Counsel for Plaintiffs*